UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
TENNESSEE AT KNOXVILLE

RICHARD PIERSON SIMON, class plaintiff,
as well as all other similar situated individuals,

    Plaintiffs,

       v.                            Civil Action No.:
                                           JURY DEMANDED

CITY OF KNOXVILLE, and KNOXVILLE MAYOR
INDYA KINCANNON,

    Defendants.

## COMPLAINT

NOW COME Plaintiffs, by and through their attorneys, THE EGLI LAW FIRM and the LAW OFFICES OF DARREN V. BERG, who hereby bring this action for declaratory and injunctive relief, and also seek the Court's approval of a limited fund class action on behalf of all similarly situated individuals in the City of Knoxville and seeking as part of the same monetary damages for the entire class for Plaintiff and all similarly situated individuals, against CITY OF KNOXVILLE and KNOXVILLE MAYOR INDYA KINCANNON, in her official capacity as the Mayor of Knoxville (hereafter referred to as "Defendants"). This cause of action is based on the Orders of the Knoxville Mayor, based on the Covid-19 disease, wherein her Orders blatantly violate the constitutional rights of individuals in the City of Knoxville as will be explained more fully herein, infra. In support of his claim, Plaintiff states the following:

## PARTIES

1.    Plaintiff, Richard Pierson Simon ("Plaintiff"), is a citizen of Tennessee and a resident of the City of Knoxville. Plaintiff, at the time of the issuance of the Orders complained of herein, was a shoe salesman for Dillard's department store at West Town Mall located in Knoxville, Tennessee.

1

2. Defendant, City of Knoxville, is a duly organized City pursuant to the laws of the State of Tennessee and can be served with process through its chief executive officer, Mayor Indya Kincannon.

3. Defendant, Indya Kincannon, is the Knoxville Chief Executive Officer and Mayor who issued the unconstitutional Orders, either facially void or voidable as a violation of due process of law as applied to this Plaintiff and all putative class members, to shut down businesses which terminated the employment, either for an extended period of time or permanently, of, upon information and belief, tens of thousands of individuals such as the lead class Plaintiff noted herein.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343(a)(3)- (4), which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution. This complaint is brought as a class action lawsuit pursuant to the limited fund doctrine.

5. This action is brought by Plaintiff and seeks relief under 28 U.S.C. §§ 2201-2202, 42 U.S.C. §§ 1983 et seq., and the Fourteenth Amendments. See U.S. Const., am. XIV.

6. Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## INTRODUCTION AND SUMMARY OF THE CLAIMS PRESENTED

7. Plaintiff is an individual who worked as a shoe salesman at Dillard's business located within the City limits of Knoxville. Plaintiff's job, and those of all others similarly situated employees, were adversely affected by their employers being ordered to shut down by way of the Knoxville Mayor's Order. A copy of the challenged Orders are attached hereto as **Collective Exhibit A**. The Orders blatantly violate the Due Process rights and fundamental constitutional rights of Plaintiff and all similarly situated employees.

8. Furthermore, the Due Process Clause of the Fourteenth Amendment, applicable to the Defendants herein--who at all times material hereto were acting under color of state law--guarantees Plaintiff, and all other similarly situated employees, the right to be free from the deprivation of his liberty and property interests without Due Process of law. See id.

9. Due Process has two separate prongs: substantive Due Process and procedural Due Process.

10. Procedural Due Process requires fair notice and fair hearing; whereas substantive Due Process challenges the very nature of the government's actions and laws.

11. Clearly, Plaintiff, and all similarly situated employees, were not provided fair notice of the shutdown Order before it occurred; neither have they been afforded a fair hearing to challenge the same.

12. More problematic, however, is the fact that the Order itself violates substantive Due Process in a fundamental way never before authorized by the Supreme Court of the United States.

13. In the absence of the declaration of martial law, neither the President of the United States, nor any other executive at the State, County or City level of these United States can suspend constitutional rights of citizens based upon their tyrannically-based belief that the vitiation of those rights is needed at the time. See Ex parte Millgan, 71 U.S. 2 (1866).

14. In considering the individual liberties guaranteed to the citizens of this realm as set forth in the Constitution of these United States, a rightful respect for the views held by our founders, as to the issue at hand, would seem quite appropriate:

(a) "Those who would give up essential liberty to obtain a little temporary safety, deserve neither liberty nor safety." -- Benjamin Franklin, 1775.

(b) Upon exiting the Constitutional Convention, Benjamin Franklin was asked by a group of citizens what form of government had been created. In response, Mr. Franklin stated, "A republic, if you can keep it." -- Benjamin Franklin, 1787. A republic differs materially in

3

form of government from almost all other forms of government in that it is organized to protect the liberty interests of regions, and the inhabitants thereof, over those of the mass-population centers, and the inhabitants thereof.  See, e.g., The Pre-Caesarian Roman Republic; see also Brabham, Francis, The Political Works of Marcus Tullius Cicero Comparing his Treatise on the Republic and his Treatise on the Laws, (Spettigue 1841).  A unique and constitutionally protected portion of our experiment in republicanism, see, e.g., the multiple times the loser of the popular vote has won the Presidency of the United States; c.f. U.S. Const., Art. 1, § 2, is the fact that the rights of the region (States) and the *individual* cannot be usurped.  The entire purpose of the Bill of Rights (mandated by the anti-federalists), was to ensure the rights of the individual.  See U.S. Const., ams. I, II, III, IV, V, VI, VII, VIII and IX.  These rights, as noted by Jefferson and John Locke before him, do not originate from GOVERNMENT.  See Jefferson, Thomas, Adams, John, Franklin, Benjamin, The Unanimous Declaration of these United States of America, (Maltack, Timothy, Philadelphia, Penn., 1776) ("We hold these truths to be self-evident, that all men are created equal, that they are endowed ***by their Creator*** with certain unalienable rights, that among these are life, *liberty* and the pursuit of happiness.").  If these fundamental rights do not originate from government (man), they cannot be taken away by government (man).  Any suggestion to the contrary by these Defendants and our federal and state superiors, supreme beings, betters, overlords, controllers, and tyrants, constitutes nothing less than an express repudiation of the founding principles of this Republic--notwithstanding an alleged virulent strain of the flu (as if that hasn't happened before!).   It is readily apparent our founders were aware of the plague.  See "Yellow fever breaks out in Philadelphia" in 1793 (History.com last checked Apr. 24, 2020). Yet, they somehow failed--albeit recognizedly pursuant to deeply-held beliefs, a concept seemingly utterly alienated to those of our current federal, state and local masters--to set forth any provisions in our primary law allowing the suspension of constitutional liberties and freedoms, absent rebellion or invasion.  It is without question our founders certainly knew of the

plague before 1793, but, to the extent the Defendants herein demand strict proof thereof, Plaintiff would refer them to their previously shut-down libraries (which may be shuttered again soon-- whenever the Mayor deems it necessary!), where ample volumes therein will help illuminate them in this regard. More importantly, if our framers deemed an outbreak of a virulent strain of the flu to be of such critical importance to vitiate the liberties of Americans, they surely would have amended the federal constitution to ensure tyranny could prevail, and individual rights could cease to exist, for the then-existing national emergency of whatever method, novelty, or proportion our then-existing better-doers decide is in the best interest of us mere plebes! These actions are so far afield from acceptable constitutional practice and jurisprudence to be, in the absence of the national media horde proclaiming the impending utter demise of Western Civilization unless we all "shelter in place" "until a vaccine is approved," an affront to an organized system of liberty.

(c) Thomas Jefferson, the primary drafter of the Declaration of Independence, and one of our most important founders, stated as follows:

> The people can not be all, and always, well informed. The part which is wrong will be discontented in proportion to the importance of the facts they misconceive. If they remain quiet under such misconceptions it is a lethargy, the forerunner of death to the public liberty. We have had 13 states independent 11 years. There has been one rebellion. That comes to one rebellion in a century and a half for each state. What country before ever existed a century and half without a rebellion? And what country can preserve its liberties if their rulers are not warned from time to time that their people preserve the spirit of resistance? Let them take arms. The remedy is to set them right as to facts, pardon and pacify them. What signify a few lives lost in a century or two? The tree of liberty must be refreshed from time to time with the blood of patriots and tyrants. It is its natural manure.

Letter from Thomas Jefferson to William Stephens Smith, 1787.

(d) In Federalist Paper No. 51, James Madison explained,

> The interest of the man must be connected with the constitutional rights of the place. It may be a reflection on human nature, that such devices should be necessary to control the abuses of government. But what is government itself, but the greatest of all reflections on human nature? If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be

5

administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself.

....

Justice is the end of government. It is the end of civil society. It ever has been and ever will be pursued until it be obtained, or until liberty be lost in the pursuit.

Federalist Paper No. 51, James Madison, 1788.

(e) Indeed, Article 1, Section 9, Clause 2 of the United States Constitution, as made applicable to these Defendants by the Due Process Clause of the Fourteenth Amendment, sets forth some rather interesting language, which our tyrannical do-gooders and self-proclaimed know-it-all elected officials and overseers seem to ignore, perhaps with impunity until the initiation of this action:'

The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

U.S. Const., Art. 9, § 2 (1787; ratified 1789).

If the Writ of Habeas Corpus "shall not be suspended," except in cases of "rebellion or invasion" then quite obviously, the remainder of the Constitution's individual protections and rights cannot either, save for well-established, and long-existing authority relating to the suspension of those rights for individuals convicted of crimes and or of those who are sick with some disease pursuant to public health epidemics or pandemics where the State's authority to quarantine the SICK--but not the HEALTHY--has been long recognized.

(f) "Give me liberty or give me death!" - Patrick Henry, 1775.

15. Although legal precedent exists for an executive, as noted hereinbefore, to order a person who is sick with a disease to quarantine, no precedent exists, whatsoever, to allow an executive to issue an order, mandating under penalty of law that non-sick persons shelter in place or to close businesses (and render their workers unemployed)--wherein no proof exists that said business is causing or contributing to the spread of such disease other than the presence of its customers and employees.

16. As a result of the Orders, mandating the closure of businesses deemed "non-essential," Plaintiff lost his job through no fault of his own; rather, his job, and all jobs of employees of businesses that were also shut down, was taken away solely by the Defendants' Order.

6

17. In addition, the Defendants' Order itself is abjectly ridiculous, not based on any science whatsoever--as to which employees and businesses are "essential" and allowed to remain open and which businesses and their employees are "non-essential" and required to close.

18. For just one example, and numerous more will be set forth herein, the Knoxville Mayor's Order, deems as essential Wal-Mart, Kroger, Target and others (which sell shoes and clothing), but deems as non-essential Department stores selling the same products, such as Dillard's. Only a bureaucrat could conceive such utter inanity.

19. In the alternative, the Orders in question are arbitrary and capricious (if rational basis is applied) and not narrowly tailored to promote a compelling governmental interest (if strict scrutiny is applied).

20. The Constitution of the United States does not cease to exist at the desk of any executive from the President, to the Governor, to these Defendants.

21. These Defendants' actions cannot stand unless this Court were to suspend the rights of the Plaintiff, and all other similarly situated employees, based on the flu! Utter nonsense!

## FACTS

22. The World Health Organization ("WHO") and the Center for Disease Control and Prevention ("CDC") identified the novel coronavirus ("COVID-19") as a "public health emergency of international concern."

23. Likewise, the U.S. Department of Health and Human Services ("HHS") declared that COVID-19 has created a public health emergency.

24. On March 16, 2020, Mayor Indya Kincannon, proclaimed the existence of a state of emergency throughout the City of Knoxville. See Collective Exhibit A.

25. After issuing several Orders after the Proclamation, on March 31, 2020, Mayor Indya Kincannon, in what was designated as Order No. 4, prohibited all gatherings of ten or more

people, including, but not limited to, community, civic, public, leisure, faith-based (churches)[1], sporting events, parades, concerts, festivals, conventions, fundraisers and similar activity. The Order goes on further to close all businesses to the public which were not performing essential services and included, but was not limited to, hospitality, educational, and entertainment businesses and facilities, nail, massage, tattoo, tanning, waxing, and other such facilities, and public and private social clubs. The Order required Plaintiff's employer, and the employer of all similarly situated putative class member to close. See Collective Exhibit A, Order No. 4.

26. Mayor Indya Kincannon's Order made no distinction between sick people or people who may have been diagnosed with Covid 19 but rather applied to **all** people and businesses living and doing business in Knoxville, Tennessee. See Collective Exhibit A, Order No. 4.

27. Moreover, Mayor Kincannon's Orders are arbitrary and capricious in the extreme in that no scientific or medical bases exist to allow certain stores to remain open, such as Target, Walmart, Kroger, and others that were and are allowed to remain open which, upon information and belief, sell shoes and clothing.

28. Mayor Indya Kincannon's unconstitutional actions herein were at all times relevant exempt from any Orders issued by Governor Lee with regard to the Covid 19 Pandemic.

29. Unless this Honorable Court issues an injunction prohibiting the unconstitutional actions set forth herein, it is possible and perhaps likely that Mayor Indya Kincannon will reissue these unconstitutional orders if there is a second outbreak of Covid 19 or if she deems it necessary based upon an insufficient "flattening of the curve" or an uptick in new Covid-19 cases, which would result in further irreparable harm upon the Plaintiff and the class members herein.

---

[1] "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof . . . ." Apparently, Mayor Kincannon believes the First Amendment does not apply to her. As Mayor Kincannon should know, the First Amendment DOES APPLY to the Mayor of Knoxville by way of the incorporation doctrine. See Cantwell v. Connecticut, 310 U.S. 296 (1940) (applying the prohibitions against governmental tyranny as contained in the Free Exercise Clause of the First Amendment to the several states by way of the Due Process Clause of the Fourteenth Amendment).

8

Case 3:20-cv-00197-TRM-DCP    Document 1    Filed 05/05/20    Page 8 of 19    PageID #: 8

## BUSINESS RESTRICTIONS UNDER THE ORDER AT ISSUE HEREIN

30. Under the Orders at issue herein, Defendants mandated the shutdown of all business not deemed essential, such as Dillard's. In the Orders, "essential" means, hospitals, grocery stores (that also sell clothes, such as Kroger, Sam's Club, Wal-Mart, Target, etc.), beverage stores (read liquor stores as they have never closed) gas stations, hotels, parks and banks.

31. Any business operating out of compliance with the Order herein is subject to the possibility of severe fines and penalties.

32. Notably absent from the executive Orders issued by Defendants is any provision addressing the inherent financial burden inflicted by the Order on employees of businesses throughout Tennessee as a direct result of the mandated shutdowns.

33. Under the Orders herein, businesses, such as the Plaintiff's employer, which can safely operate while still observing social distancing were ordered to close by way of governmental tyranny, thereby constituting an express repudiation of the Constitution of the United States.

34. Plaintiff's employer was not categorized as an "essential" business that would be permitted to stay open when Defendants ordered several categories of businesses to close for the stated public purpose of controlling COVID-19 to protect public health.

35. Plaintiff, and all other similarly situated employees, have suffered irreparable injuries as a result of the Defendants' Order.

36. Plaintiff, and all other similarly situated employees, have now lost their jobs by Defendants' unconstitutional Order since March 31, 2020. Many of the putative class Plaintiffs will never be able to recover financially as the Defendants have decided to select the winners and losers in business--and the employees thereof.

37. For example, Wal-Mart, Sam's Club, Target, Kroger and others can remain open because they sell food and/or appliances; but they also sell clothing and shoes. However, a department store, like Dillard's, (that sells clothing and shoes) cannot. These Orders, utterly devoid of

scientific or medical bases, and in express repudiation of common sense and logic, beg the question as whether those issuing the same are even aware the Constitution of the United States applies to them. Quite obviously, these Defendants cannot pick winners and losers in business--selecting some (and their employees) for governmentally-mandated approval to continue operating (and paying their employees)--while closing most all others (leaving said employees without employment).

38. Further, Wal-Mart (deemed essential) is allowed to remain open and sell clothing and shoe products, but Plaintiff, and all other similarly situated businesses were ordered to close. Clearly, the Mayor and City cannot do this! It boggles the mind that a lawsuit even has to be filed to re-enforce the constitutional rights of city-based businesses and their employees. But it clearly does, as the Mayor and City have not rescinded their Orders, and more importantly, believe the same to have been legally and properly issued.

39. With the forced closures, Defendants caused considerable damage to Plaintiff, and all other similarly situated employees of the shut-down business, as to their wages.

40. The Defendants actions have resulted in massive, and in most cases, irreversible losses to the employees financial circumstances that are in dire need of an immediate Order, enjoining the Defendants from any continuation of their unconstitutional Order notwithstanding their proposed "phased" re-opening of said businesses.

41. Despite issuing the Order for a readily-apparent public purpose, Defendants did not provide compensation for those who suffered substantial – and perhaps total – loss of wages and their jobs. These Orders by their operative provisions deprived Plaintiffs of their ability to work and earn wages and thus pay their bills, feed their families, and live! <u>See, e.g.</u>, U.S. Const. am. XIV.

42. Through its unconstitutional Orders, shutting down Plaintiff's employer and all other similarly situated employees through the shutting down of their employers, Defendants have

10

interfered with the oral (and perhaps written) contracts of Plaintiff, and all other similarly situated Plaintiffs, in express violation of the Contracts Clause of the United States Constitution. See U.S. Const. art. 1, section 10, clause 1.

## AUTHORITY

43. Mayor Indya Kincannon claimed her authority to enact the Orders by citing a set of broad emergency statutes which were said to authorize their actions to stem the spread of COVID-19 across the City of Knoxville, County of Knox and Tennessee.

44. This suit accepts as fact that Mayor Indya Kincannon took action for a public purpose. As stated in the preamble to the executive orders, "the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared [COVID-19] a 'public health emergency of international concern,' and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency."

45. However, Defendant Kincannon's Order is arbitrary and capricious in that it allows Wal-Mart, Sam's Club, Kroger and Target Stores (that sell shoes and clothing) to remain open but closes department stores (that sell shoes and clothing). Indeed, only a government bureaucrat, selecting winners and losers based on consideration of campaign contributions, industry trade groups, lobbyists' arguments and the like could ever formulate such a ridiculous, non-scientific based Order. In addition, any business deemed essential can sell clothes; Plaintiff's employer , and all other similarly situated businesses' employees were ordered to close by Defendant's Orders, which make no logical sense whatsoever and do not therefore pass the rational-basis-test let alone strict scrutiny review.

46. In addition, in closing all of the stores, deemed non-essential, the Order has resulted in the massive increase in in-person shopping at stores like Wal-Mart, Sam's Club, Kroger, Target, etc. Upon information and belief, if the purpose of the Defendants' Orders are to halt the spread of the Covid-19 virus, it appears as if the Defendants' Orders are primarily designated to promote the

spread: herd all members of the community into a few designated businesses. Utterly, incomprehensible! As noted, the Defendant's Order makes no logical sense whatsoever and does not therefore pass the rational-basis-test let alone strict scrutiny review.

47. Notwithstanding any legitimate public purpose, the Defendants' Orders violate the fundamental rights of Plaintiff, and all individuals similarly situated employees, to be free from governmental interference in their employment agreements as protected by the Constitution of the United States and the Constitution of the State of Tennessee.

## COUNT I

## VIOLATION OF THE CONTRACTS CLAUSE—42 U.S.C. §1983

### The Order herein is an unconstitutional interference of the Defendants with the contracts of employment of Plaintiff and all similarly situated Plaintiffs

48. Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

49. Defendants' Orders, closing all businesses deemed "non-essential," clearly interfered with the rights of Plaintiff, and all similarly situated employees, to be free of governmental interference with their liberty and property interests in their contractual agreements.

50. These Orders, interfering with said contracts, are in violation of the Due Process Clause of the Fourteenth Amendment, guaranteeing the rights of said Plaintiff, and all other similarly situated employees, to be free from the deprivation of their rights to liberty and property in their contractual agreements.

51. Defendants issued Executive Orders for the public purpose of protecting the public health, safety and welfare.

52. Defendants have placed the cost of these Orders – issued for the benefit of the public – squarely upon the shoulders of employees of shut down businesses but have failed to justly compensate the affected employees for their unconstitutional actions.

53. Defendants herein acted under color of state law.

12

54. Given the foregoing, the Plaintiff, and all similarly situated employees of shut-down businesses, would sue the Defendants for interfering with their employment agreements and seek this Court's approval of a class action based on the limited fund doctrine based on the Orders in question.

## Count II

### SUBSTANTIVE DUE PROCESS—42 U.S.C. §1983

### INTERFERENCE WITH LIBERTY AND PROPERTY INTERESTS

### 2020-21 and 2020-42 A Class Action Claim to Deprive Plaintiff, and all Similarly Situated Employees, of their Rights to Liberty and/or Property without Due Process of Law in Violation of the Fourteenth Amendment

55. Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

56. Never in the history of the United States – even in war time – has any governmental entity, such as these Defendants, created laws and/or issued executive orders, such as the challenged Order herein, vitiating the constitutional rights of "all" citizens, and businesses, on a state and/or national basis as has occurred by the issuance of the challenged Orders. The two potential exceptions to this statement resulted in the Supreme Court's reversal of President Lincoln's suspension of the writ of habeaus corpus for southern sympathizers, Ex Parte Milligan, see, supra at 3, ¶ 13, and on the Supreme Court's affirmance of President Roosevelt's Order, quarantining (or placing into detention) American citizens of Japanese descent, Korematsu v. United States, 323 U.S. 214 (1944) (challenging President Roosevelt's executive Order 9066 of February, 1942). As cannot seriously be argued, Korematsu had for generations come into substantial disfavor and criticism by leading constitutional scholars, and it was recently given its proper place in the ash heap of history alongside Dred Scott v. Sandford, 60 U.S. 393 (1856), overruled by U.S. Const. am. XIII, and Plessy v. Ferguson, 163 U.S. 537 (1896), overruled by Brown v. Board of Education, 347 U.S. 483 (1954). See Trump v. Hawaii, 585 U.S. ____, 138 S. Ct. 2392 (2018) (Roberts, C.J.) ("The dissent's reference to Korematsu, however, affords this Court the

13

opportunity to make express what is already obvious: Korematsu was gravely wrong the day it was decided, has been overruled in the court of history, and—to be clear—'has no place in law under the Constitution.'"). Notwithstanding those abhorrent decisions--ultimately corrected by the chief arbiter of the meaning and application of our primary law to the citizens of this realm, neither Dred Scott nor Korematsu so much as attempted to ignore, suspend or vitiate the constitutionally-protected rights in question to all citizens (Dred Scott--only to slaves; Korematsu--only to citizens of Japanese descent). As such, these Orders are even more constitutionally repugnant than those abominations! To be clear, the Orders challenged herein are more of an affront to the principles of individual liberty enshrined in the Declaration of Independence and as set forth thereafter in the United States Constitution and the Bill of Rights than either of the decisions in Dred Scott or Korematsu. These Orders cannot stand if we are to retain our well-earned reputation as a nation governed by laws and not men. If the people through their elected representatives and executives wish to amend the constitution so as to suspend constitutional rights when a virulent flu occurs, then they may do so. However, unless and until they do, these Orders, and all others like them, must be struck, and compensation based on the same must be paid, or we no longer have kept our republic. We will have simply given nurture and succor to Franklin's dire apocalyptic warning that if we were ever to trade liberty for safety, we are entitled to neither.

57. The Plaintiff, and all similarly situated employees of shut-down businesses, has a protected liberty interest in his right to live without arbitrary governmental interference in his fundamental property right to earn a living.

58. The Supreme Court "ha[s] emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government[.]" Cty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)).

59. Governmental liability and "fault [may] lie[] in a denial of fundamental procedural fairness … or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" Id. at 845-846 (citations omitted).

60. "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty[.]'" United States v. Salerno, 481 U.S. 739, 746 (1987) (quoting Rochin v.California, 342 U.S. 165, 172 (1952), and Palko v. Connecticut, 302 U.S. 319, 325–326 (1937)).

61. "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Lewis, 523 U.S. at 847 (quotations omitted).

62. These Orders as set forth above, constitute arbitrary, capricious, irrational and abusive conduct which unlawfully interferes with Plaintiff's, and all other similarly situated employees of shut-down business's, liberty and property interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

63. Defendants have acted under color of state law with the intent to unlawfully deprive the Plaintiff, and all other similarly situated Plaintiffs, of their liberty and property without substantive or procedural due process in violation of the Fourteenth Amendment to the United States Constitution.

64. Defendants' actions, including issuance and enforcement of these Orders, constitutes the official custom, policy, and procedures of the City of Knoxville, and because they were issued at the executive level, said Orders constitute the official custom, policy and procedures of said City.

65. Defendants' have arbitrarily, irrationally and capriciously imposed upon Plaintiff, and other similarly situated employees', rights as previously noted herein because if the Orders were designed to prevent the spread of Covid-19, they have resulted in herding all members of the

15

community into a few, governmentally-approved businesses to the exclusion of all others. Science this is not!

66. The Defendants Orders violate substantive and procedural due process.

67. The Defendants' behavior does not comport with traditional ideas of fair play and decency, Breithaupt v. Abram, 352 U.S. 432, 435 (1957), and shocks the conscience' and violates the 'decencies of civilized conduct.'" See Lewis, 523 U.S. 833, 846–47 (citations omitted); and violates Plaintiff's, and all similarly situated businesses, substantive and procedural Due Process rights.

68. In the absence of a declaration of martial law, no governmental entity in this nation may vitiate the constitutional rights of its citizens. See Ex Parte Milligan, supra; accord Trump, 585 U.S. ___, 138 S. Ct. 2392, overruling Korematsu, 323 U.S. 214. Perhaps unbeknownst to foreign tyrants, the President of these United States, the Governor of the State of Tennessee, and these Defendants, the constitutional rights of Tennesseans--who more than any other citizens of this realm are responsible for the protection of same on pain of death (the Volunteer State is not because we volunteered for football; it's because we volunteered to fight and die for those words Mr. Jefferson wrote and the principles in the Constitution that followed)--actually STILL APPLY during a virulent QUASI-FLU PANDEMIC. If the government wishes to vitiate such rights legally, it simply needs to amend the Constitution of the United States and insert a "your-rights-cease-when-the-flu-becomes-a-public-problem-that-we-deem-sufficiently-important" clause as an amendment thereto. In the meantime, these authorities' actions constitute nothing less than tyranny! If it were not for the existence of a tri-partite form of government, these actions would go unchallenged! Unfortunately for these Defendants and their tyrannical comrades, the judicial branch of our federal system holds the ultimate authority to determine whether their Orders comply with the primary law of this realm.

16

Case 3:20-cv-00197-TRM-DCP   Document 1   Filed 05/05/20   Page 16 of 19   PageID #: 16

69. As a direct and proximate result of Defendants' Executive Orders, Plaintiff, and all similarly situated employees, have and will continue to sustain, monetary damages.

70. Plaintiff, and all other similarly situated employees, therefore sue the Defendants for violating their rights secured by the Constitution, Treaties and Laws of the United States and seek money damages for each putative class member.

71. Plaintiff also seeks class certification based on the limited fund class action doctrine as these Defendants do not possibly have sufficient funds to satisfy these claims.

72. Finally, the proper standard of review (strict scrutiny, intermediate scrutiny or rational basis) is somewhat unknown as no governmental entity issuing an Order--save those previously noted herein, has ever attempted to vitiate the constitutional rights of citizens to any degree as those contained within the challenged Orders. And both President Lincoln's and Roosevelt's actions were ultimately repudiated by the United States Supreme Court. See Ex Parte Milligan, Korematsu; see also Marbury v. Madison, 5 U.S. 137 (1803)

73. In any event, clearly the rights at issue are fundamental rights and this Court should therefore employ strict scrutiny to review them. When applying strict scrutiny, this Court has no choice but to conclude that the challenged Orders are facially void in violation of substantive Due Process as the challenged Orders are not sufficiently narrowly tailored to promote the government's alleged compelling interest. Therefore, under strict scrutiny, these Orders must be struck down as unconstitutional.

74. In the alternative, the Orders in question are utterly nonsensical. For example, a liquor store is deemed essential (which sells cigars), but a cigar store which sells alcohol is deemed non-essential (and therefore shut down). How does a bureaucrat even conceive this? Just because an infectious disease specialist opines that many citizens will die without such Orders, does that cloak any executive with constitutional immunity? In the absence of a constitutional amendment, allowing for the vitiation or restriction of the constitutional rights of the governed, the answer does

not even need to be stated as it is readily apparent. Therefore, the only possible excuse is that this executive has traded safety for liberty, and therefore she is entitled to neither.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants in his favor as follows:

A. That this Honorable Court certify this Complaint as a class action;

B. That the Plaintiff and the class members be awarded damages to be determined at trial.

C. For a temporary and permanent injunction to be issued by this Court in order to prevent any further irreparable damages to the Plaintiff and the class members.

D. For a declaration that the Orders are facially unconstitutional or are unconstitutional as applied to Plaintiff and all the class members.

E. For attorney's fees and court costs to be assessed against the Defendants pursuant to 42 U.S.C. section 1988.

F. For a jury to be empaneled to hear this cause.

G. For discretionary costs.

      Respectfully submitted,

      **THE EGLI LAW FIRM**

      s/Russ Egli
      Russ Egli, BPR#024408
      The Wisdom Building
      11109 Lake Ridge Drive, FL3
      Concord, TN 37934
      (865) 304-4125
      F:(855) 827-0624
      E-mail: russelleglilaw@gmail.com

      **LAW OFFICES OF DARREN V. BERG**

      s/Darren V. Berg
      Darren V. Berg

Lead Counsel
P.O. Box 33113
Knoxville, TN 37933
(865) 773-8799
E-mail: dberglawfirm@gmail.com

*Attorneys for the Plaintiff and other similarly situated individuals*

19

Case 3:20-cv-00197-TRM-DCP    Document 1    Filed 05/05/20    Page 19 of 19    PageID #: 19